UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

STEPHEN ROBIDOU                          :
                                         :
            v.                           :        C.A. No. 05-416A
                                         :
JO ANNE B. BARNHART,                     :
Commissioner of the Social Security      :
Administration                           :

## MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42 U.S.C.

§ 405(g). Plaintiff filed his Complaint on October 7, 2005 seeking to reverse the decision of the

Commissioner or, in the alternative, to remand for further proceedings. Plaintiff filed a Motion for

Summary Judgment on May 15, 2006. The Commissioner filed a Motion for an Order Affirming

the Decision of the Commissioner on June 14, 2006.

With the consent of the parties, this case has been referred to me for all further proceedings

and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon

my review of the entire record, independent legal research, and the legal memoranda filed by the

parties, I find that there is not substantial evidence in the record to support the Commissioner's

decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I

order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner

(Document No. 10) be DENIED and that Plaintiff's Motion for Summary Judgment (Document No. 9) be GRANTED and this matter remanded for further administrative proceedings.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB on March 26, 2002, alleging an inability to work since January 14, 2002.  (Tr. 96-99, 306-310).  The applications were denied initially (Tr. 65-69, 311) and on reconsideration.  (Tr. 71-74, 313-316).  Plaintiff requested an administrative hearing. (Tr. 75).  On January 20, 2004, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ"), at which Plaintiff, represented by counsel, a vocational expert and a medical expert appeared and testified.  (Tr. 20).  On February 27, 2004, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 17-24).  The Appeals Council denied Plaintiff's request for review on August 5, 2005, thus making the ALJ's decision the final decision of the Commissioner.  (Tr. 5-7).  A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in finding that Plaintiff had a substance abuse disorder and no other impairments.  Plaintiffs also argues that substantial evidence supports a finding that Plaintiff suffered from bipolar disorder and anxiety/panic disorder.  Plaintiff further argues that the ALJ did not properly analyze Plaintiff's substance abuse and erred in failing to consider the opinion of the treating nurse practitioner.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support the ALJ's finding that Plaintiff is not disabled because he retained the RFC to perform medium level work and was able to perform his past work.

### III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

-3-

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for

failure to submit the evidence at the administrative level. <u>See Jackson v. Chater</u>, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. <u>Jackson</u>, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. <u>Id.</u> The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. <u>Id.</u>

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. <u>See Rohrberg v. Apfel</u>, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20

C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st

Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d

990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right

to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of

that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human

Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by

counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained

counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty,

947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir.

1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's

medical sources do not give sufficient medical evidence about an impairment to determine whether

the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir.

1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a

consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs.,

758 F.2d 14, 17 (1st Cir. 1985).

**D.    The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.     Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the

Commissioner's burden can be met only through the use of a vocational expert. <u>Heggarty</u>, 947 F.2d

at 996. It is only when the claimant can clearly do unlimited types of work at a given residual

functional level that it is unnecessary to call a vocational expert to establish whether the claimant

can perform work which exists in the national economy. <u>See</u> <u>Ferguson v. Schweiker</u>, 641 F.2d 243,

248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work

capacity level indicated by the exertional limitations.

**1.   Pain**

"Pain can constitute a significant non-exertional impairment." <u>Nguyen</u>, 172 F.3d at 36.

Congress has determined that a claimant will not be considered disabled unless he furnishes medical

and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C.

§ 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs

and laboratory findings show medical impairments which reasonably could be expected to produce

the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the

following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and
> intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity,
> environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1ˢᵗ Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.      Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony can require remand so that the ALJ may "make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]."  DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 26 (1ˢᵗ Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11ᵗʰ Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the

implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.   APPLICATION AND ANALYSIS

Plaintiff was forty-four years old at the time of the ALJ hearing. (Tr. 96). He earned a general equivalency diploma ("GED") with past relevant work as a zamboni operator, park attendant, property control officer and laborer. (Tr. 40-41, 60, 112, 117). The VE testified that these were unskilled or semi-skilled jobs that were performed at the light or medium exertional level. (Tr. 60-61).

Plaintiff was hospitalized at Rhode Island Hospital briefly in August 1999 with respect to a possible suicide attempt. (Tr. 129-156). Plaintiff left a note with his brother that he went to the beach to kill himself. (Tr. 143). Plaintiff reported that he had not been taking his Lithium or Prozac for about one week. (Tr. 143). Blood testing was positive for opiates, cocaine and benzodiazepines, and Plaintiff admitted to drinking a six pack of beer and using cocaine on the evening prior to his hospital admission. (Tr. 129, 151). Plaintiff was placed on Lithium and Prozac while hospitalized, showed improvement in his depressive symptoms and was discharged on August 23, 1999. (Tr. 129-130).

Plaintiff had been under the care of Dr. E. Jon Wolston, a psychiatrist, since March 1995 for bipolar disorder, post-traumatic stress disorder, and intermittent alcohol and cocaine abuse. (Tr. 164). In May 2000, Plaintiff had been out of work for a short period of time as a result of a back condition and told Dr. Wolston that he had recently run out of a grocery store with feelings of tightness in his chest and he had difficulty breathing. (Tr. 159). Dr. Wolston noted that Plaintiff had

-12-

been off all his medications, and Dr. Wolston resumed his old medications. (Tr. 159). In October 2001, Dr. Wolston noted that Plaintiff had not had his lithium blood serum level checked in over a year. (Tr. 162). Dr. Wolston's impression was that Plaintiff's condition was stable, and he renewed his medications. Id.

On January 8, 2002, Plaintiff reported to Dr. Wolston that he had been out of work for several weeks and might lose his job because a co-worker filed a complaint that he was putting his feet up and closing his eyes on breaks, and a photographer had taken a picture of him doing so. (Tr. 162). His medications were renewed at that time, but Plaintiff wanted another refill on January 29, 2002 "just in case" he lost medical coverage following a meeting on his employment status. (Tr. 162-163). In March 2002, it was reported that Plaintiff had been without medication for two weeks, and he complained of panic attacks and increased agoraphobia. (Tr. 163, 343). Plaintiff had apparently lost his job, and it was noted that his attorney was appealing an unemployment decision that presumably denied benefits. Id.

On March 22, 2002, Plaintiff was seen by Kelley Wilder-Willis, M.A., a psychology intern at the VA Medical Center in Providence. (Tr. 192-201). Plaintiff reported that Dr. Wolston had referred him to have his medications refilled, having been out of them for a few weeks due to his unemployment. (Tr. 193). Plaintiff reported a history of bipolar disorder that had worsened since losing his job in January, but that his mood had been "alright" until the week of March 11, 2002. Id. Plaintiff reported drinking about once a week (six beers) and that he had used marijuana and cocaine a few days previously. (Tr. 196). No memory impairment or difficulty concentrating was observed, and it was opined that Plaintiff's intellectual functioning and judgment were not impaired.

-13-

(Tr. 197).  Bipolar disorder and alcohol and cocaine abuse were diagnosed, and the alcohol and cocaine abuse were described as "in sustained, partial remission" despite Plaintiff's admitted continued use of both alcohol and cocaine.  (Tr. 198).  Plaintiff's global assessment of functioning ("GAF") was rated at 50, and the highest GAF in the preceding year was rated at 60.[1]  (Tr. 199).

On May 13, 2002, Plaintiff was seen by Dr. Michael Arsenault, a psychiatry resident, and reported having run out of his medications two weeks earlier.  (Tr. 182).  Plaintiff reported that he had last used marijuana "a while ago" and cocaine a month earlier but that he drank six to twelve beers, three or four times a week.  Id.  Plaintiff's mood was anxious, but he was cooperative, pleasant and offered good eye contact; his memory was intact, and his judgment and insight were appropriate. (Tr. 183).  Dr. Arsenault advised Plaintiff that because of his bipolar disorder, it was important that he adhere to his medication regimen and remain sober; he opined that his drinking might be contributing to his subjective sense of depression.  Id.  Dr. Arsenault diagnosed bipolar disorder, marijuana abuse, cocaine abuse versus dependence and alcohol abuse versus dependence and rated his GAF at 55.  (Tr. 183-184).

On July 18, 2002, Plaintiff was seen by Dr. Laura Levine, a psychiatry resident, who reported that he had been out of his medication for about a month and denied any alcohol use since his last visit.  (Tr. 166).  Dr. Levine gave Plaintiff one refill of his prescription and arranged for another appointment within a month.  (Tr. 167).

---

[1]  A GAF rating of between 41 and 50 represents a person with some serious symptoms or any serious impairment in social, occupational, or school functioning; a GAF rating between 51 and 60 is indicative of an individual who has moderate psychological symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).  The higher the rating is within the range, the less severe the symptoms are.

On August 23, 2002, Plaintiff reported considerable alcohol intake (thirty beers "q od" or every other day), that he had taken a friend's Vicodin and that he had only four Klonopin tablets left from 180 dispensed less than two weeks earlier, but he emphatically denied overuse. (Tr. 242, 244). Plaintiff's memory was not impaired, and he did not have difficulty concentrating or attending. (Tr. 245).  Bipolar disorder, alcohol abuse and dependence, polysubstance abuse including r/o benzodiazepine abuse and benzodiazepine dependence were diagnosed, and Plaintiff's GAF was rated at 45 by Diane Roberts, RN, a clinical nurse specialist. (Tr. 247, 249).

On August 26, 2002, Ms. Roberts noted that Plaintiff was alert and oriented and reported improved mood. (Tr. 254).  Plaintiff had discontinued Prozac as previously instructed and denied recurrent panic attacks. Id. Plaintiff was scheduled to obtain Lithium level, LFTs, BUN, Creatinine and TSH from the lab on August 30, 2002 but failed to go. (Tr. 254, 256).

On September 6, 2002, Plaintiff was instructed to have blood drawn for lab testing before medications would be reordered for him. (Tr. 257).  Ms. Roberts assessed Plaintiff's GAF at 49. (Tr. 258).  Temporary Disability Insurance ("TDI") was authorized until a reevaluation scheduled for October 4, 2002, and Ms. Roberts wrote a note in which she opined that Plaintiff "has been unable to maintain employment due to symptoms of his [bipolar disorder]." (Tr. 258, 345).  When the lab results came back, Plaintiff's lithium level was critically elevated to 2.18, well above the therapeutic level. (Tr. 261, 266).

On October 4, 2002, Plaintiff's affect was sad and anxious, and it was noted that he had many stressors including problems with his daughter and debt owed to his landlord. (Tr. 269).  Plaintiff dates the onset of his decreased mood to the discontinuation of Prozac previously prescribed. Id.

-15-

Prozac was restarted, and his dosage of Lithium was increased, as his Lithium level was barely at the therapeutic level. (Tr. 270). In mid-October 2002, Dr. Wolston's impression was that Plaintiff's mental status was stable. (Tr. 342). In November, Plaintiff reported to the VA that his anxiety had decreased since having been back on Prozac. (Tr. 273).

On February 24, 2003, Plaintiff was seen by Dr. Rafael Gracia, a staff psychiatrist at the VA Medical Center. (Tr. 274-278). Plaintiff reported that he had been feeling "a little depressed." (Tr. 274). Dr. Gracia noted that Plaintiff's affect was mildly restricted, and his mood was congruent; his memory was intact; there were no abnormalities in his thought pattern; and his insight and judgment were intact. (Tr. 276-277). Dr. Gracia diagnosed bipolar disorder, depressed, mild; panic disorder with agoraphobia; and polysubstance dependence history. (Tr. 277). Dr. Gracia rated Plaintiff's GAF at 55. (Tr. 277, 278).

When seen by Dr. Gracia on May 14, 2003, Plaintiff reported insomnia, despite taking twice the dosage of Trazadone prescribed. (Tr. 279). Dr. Gracia's diagnosis remained the same, and Dr. Gracia rated Plaintiff's GAF at 58. (Tr. 281-282).

In July 2003, Plaintiff told Dr. Gracia that he had been feeling depressed due to economic problems and having recently become homeless. (Tr. 284). Plaintiff reported that he had been "doubling up" on his medication because he had recently been nervous. Id. Dr. Gracia rated Plaintiff's GAF at 54. (Tr. 287).

On August 29, 2003, Plaintiff reported that he had been hospitalized for four days earlier in the month for worsened depression and an unspecified suicide attempt. (Tr. 291). Plaintiff's mood

appeared somewhat dysphoric which Plaintiff attributed to back pain, and his affect was somewhat restricted. (Tr. 293). At that time, Dr. Gracia rated Plaintiff's GAF at 55. (Tr. 294).

On September 24, 2003, Plaintiff reported that he had been admitted to the Bedford VA on September 10, 2003 after having been out of medication for five days,[2] and having consumed alcohol and used cocaine. (Tr. 296).

An additional treatment record from January 2004 from Dr. Wolston, submitted after the ALJ's decision was issued, indicated that the use of two benzodiazepines was "rather unconventional" but that alternatives in the past had resulted in relapses of panic attacks and that the use of two benzodiazepines outweighed the risk. (Tr. 338). In April 2004, Dr. Wolston reported that he was "increasingly uneasy in the role of benzo[diazepine] provider" for Plaintiff and felt that "he'd be better off working out his issues with the VA psychiatrist." (Tr. 337).

A.    The ALJ Did Not Properly Evaluate Plaintiff's Substance Dependence

Under the Act, a finding of disability is precluded "if...drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that [an] individual is disabled." 42 U.S.C. §§ 423(d)(2)(C) (for DIB); and 1382c(a)(3)(J) (for SSI). The Commissioner's regulations provide that "a finding of disability is a condition precedent to the application" of this Section of the Act. Brown v. Apfel, 71 F. Supp. 2d 28, 35 (D.R.I. 1999). The issue is whether the claimant would remain disabled if he stopped using drugs. Specifically, the ALJ must determine which, if any, of the claimant's current limitations would remain if he stopped using

---

[2] Plaintiff reportedly had been out of medication since approximately September 6, 2003 despite the fact that a month's worth of all of his medications had been dispensed on August 29, 2003. (Tr. 301). Plaintiff had earlier received a month's worth of his medications on August 11, July 29 and July 7, 2003. (Tr. 301-302).

drugs. 20 C.F.R. §§ 404.1535(b) (for DIB); and 416.935(b) (for SSI). If any remaining limitations

would not be disabling, the claimant's drug addiction is a contributing factor material to the finding

of disability. Id. If they would be, the claimant is disabled independent of his drug addiction and

is eligible for benefits. Id.

The ALJ decided this case at Step 4 and found that Plaintiff had not met his burden of

establishing that his impairments prevented him from performing his past relevant work. (Tr. 23,

Finding 8). Relying exclusively on the opinion of the medical expert, Dr. Stuart Gitlow,[3] the ALJ

found that Plaintiff had a "severe" substance abuse disorder and did not suffer from bipolar disorder

despite a record of diagnosis and treatment for such disorder dating back to 1996. (Tr. 21). The ALJ

held that "a finding of disability cannot be based on impairment limited to substance abuse" and that

since Plaintiff's only medical impairment is substance abuse, "[i]t must be inferred...that any mental

limitations are minimal once substance abuse is removed from a determination of disability." (Tr.

22).

This Court finds two primary errors in the ALJ's analysis. First, although it is the ALJ's

province to accept the conclusions of the medical expert over Plaintiff's treating physicians, the ALJ

is required to articulate "good reasons" for the weight, or lack thereof, he gives to a treating source's

opinion. See 20 C.F.R. § 404.1527(d)(2). Here, the record includes a number of diagnoses of

disabling bipolar disorder made by treating sources, and the ALJ fails to discuss any of that evidence

or his reasons for declining to afford "controlling weight" to it. Id. The DDS consultants in this

case, Dr. Stephen Clifford and Dr. Susan Diaz Killenberg, both noted the existence of such medical

---

[3] Dr. Gitlow is Board certified in psychiatry and neurology and has a primary specialty of addiction psychiatry. (Tr. 29, 32, 95).

evidence.  Dr. Clifford stated "there is considerable evidence in file from VA and from treating psychiatrist, Dr. Wolston, which confirms dx of Bipolar D/O" and that "there are also indications of substance abuse and alcohol abuse." (Tr. 219).  Dr. Killenberg stated that the "medical record supports allegations of bipolar disorder and anxiety disorder" as well as "alcohol and cocaine abuse." (Tr. 239).  It was error for the ALJ to completely ignore this treating source evidence in his decision.

The ALJ's second error relates to his interpretation of Dr. Gitlow's testimony and failure to explore the issues of dual diagnosis and materiality.  The ALJ relied upon Dr. Gitlow's testimony in rejecting Plaintiff's claim of bipolar disorder.  However, Dr. Gitlow conceded that Plaintiff "may well have bipolar disorder." (Tr. 32).  The ALJ found that "no bi-polar diagnosis appears anywhere in this during periods of sobriety." (Tr. 21).  While Dr. Gitlow was definitely critical of the reliability of the bipolar diagnosis, he was not as definitive as suggested by the ALJ.  Dr. Gitlow indicated that, in his opinion, Plaintiff's substance abuse history required a diagnosis of "substance-induced mood disorder versus bipolar disorder." (Tr. 33).  However, in response to the next question posed to him, Dr. Gitlow stated that the record did not support one diagnosis over the other and that:

> There does appear – what the record supports is a notation that indeed the diagnosis of bipolar disorder was made during the period in which the claimant was felt to be clean and sober.  However, the records from that time were not available for my review.

Id.  Dr. Gitlow also noted that when Plaintiff stopped working in 2001, "it is unclear as to whether or not he stopped as a result of the substance use or as a result of a separate primary psychiatric disorder." Id.  Finally, Dr. Gitlow agrees that from what he "could tell, the diagnosis of bipolar was made when [Plaintiff] was sober." (Tr. 34).

Moreover, despite the medical records supporting a bipolar diagnosis and Dr. Gitlow's inability to definitively rule out such a diagnosis, the ALJ erred in failing to apply or even mention the materiality assessment (20 C.F.R. §§ 404.1535(b) and 416.935(b)) discussed above. Based on the evidence of record, the ALJ did not sufficiently examine the possibility of a dual diagnosis, i.e., bipolar disorder and substance abuse disorder, and, if one exists, whether the bipolar disorder would be disabling if Plaintiff stopped abusing drugs.

While this Court is suspicious of the validity of Plaintiff's disability claim, the deficiencies in the record and the ALJ's decision discussed above simply does not provide a substantial basis to affirm. This Court appreciates the difficulties of the ALJ's job given the high number and complexity of the cases presented. However, remand is necessary and appropriate in this case in order for the record to be more fully developed on the dual diagnosis/materiality issue and also for more in-depth analysis and discussion of the medical evidence of record. In particular, a more thorough discussion of the reasons for not giving controlling weight to the treating sources' diagnoses of bipolar disorder is necessary. While the outcome may ultimately remain the same, this Court is unable to conclude that the errors discussed above are harmless, based on the current state of the record.

**2.      The ALJ Did Not Err By Failing to Give Weight to the Opinion of a Clinical Nurse Specialist.**

Plaintiff contends that the ALJ erred in determining his RFC by failing to consider the opinion of Diane Roberts, a Clinical Nurse Specialist at the Providence VA Medical Center, as to his inability to function in a work setting. (Pl. Br. at pp. 11-12).

-20-

In December 2002, Nurse Roberts completed a questionnaire concerning Plaintiff's RFC. (Tr. 304, 323-324, 330-331). She opined that Plaintiff had a "moderately severe" impairment in all activities including performing even simple tasks. Id. The ALJ acted properly in failing to give that opinion controlling weight.

A clinical nurse specialist, such as Nurse Roberts, is not listed as an "acceptable medical source" under the Act. See 20 C.F.R. §§ 404.1513 and 416.913. Thus, her opinion does not constitute a medical opinion and is not entitled to the same weight as a medical opinion. While the ALJ could have, in his discretion, considered and discussed Nurse Roberts' opinions in his decision, 20 C.F.R. §§ 404.1513(d) and 416.913(d), he was not required to do so. Thus, there is no error in this regard.

## VI.   CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be DENIED and that Plaintiff's Motion for Summary Judgment (Document No. 9) be GRANTED. Final judgment shall enter in favor of the Plaintiff reversing the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and remanding this matter for additional proceedings consistent with this opinion.

LINCOLN D. ALMOND
United States Magistrate Judge
July 6, 2006